Hancock, Jr., J.
(dissenting). I would reverse and reinstate the order of Supreme Court.
The appeal turns on one issue: the meaning of paragraph 23, the mortgage contingency clause in form M 146 — the standard contract of sale for condominiums, prepared by the Committee on Real Property Law of the Association of the Bar of the City of New York. The standard mortgage contingency clause — with the blank spaces for the date and the amount of the lender’s commitment filled in by the parties— provides in pertinent part:
*1019 "23. Mortgage Contingency: The obligations of Purchaser hereunder are conditioned upon issuance on or before September 1, 1988 of a written commitment from any Institutional Lender pursuant to which such Institutional Lender agrees to make a loan to Purchaser, at Purchaser’s sole cost and expense, of not less than $201,375.00 * * * Purchaser shall (a) make prompt application to one or more Institutional Lenders for such first mortgage loan”.
The purpose of the typical mortgage contingency clause is simply to relieve the purchaser of the obligation of going through with the contract if mortgage financing is not obtainable in a given amount. No one contends otherwise. The commonly understood meaning of a mortgage contingency clause, as described by Justice Burrows at Supreme Court, is this:
"A mortgage contingency clause in a contract of sale of real estate is for the benefit of a purchaser who has represented that he is only ready, willing and able to purchase if third-party financing is obtainable. In order to enter into the contract and allow purchaser time to obtain the requisite financing the contract is made conditional upon fulfilling the very financing requirement represented by purchaser as necessary. Thus, a purchaser, who has made a good faith estimation of his ability to obtain the requisite financing, is protected from conclusively binding himself to an otherwise impossible contract should his good faith estimation prove incorrect” (emphasis added).
It is not suggested that the Committee on Real Property Law which drafted form M 146 intended that the standard mortgage contingency clause should be given any meaning other than the generally accepted meaning — i.e., one which makes the purchaser’s obligation depend not on the purchaser’s action in applying for a loan but on the willingness of a third party to make a loan. Yet, here the purchasers and the Appellate Division in reversing Supreme Court and, indeed, the majority of this Court read the standard clause as though it says something quite different. Instead of making the contract contingent on a third party’s willingness to make a commitment "of not less than $201,375.00”, they make it *1020 contingent upon action by the purchasers; i.e., their act of applying for a loan "of not less than $201,375.00”. Under this construction, the condition is met if the purchasers apply for a loan in any amount equal to or greater than $201,375. In this case, because the purchasers applied unsuccessfully for a loan in the amount of $241,650, the contingency was met and they are relieved of any obligation under the contract. This is so, even though a third party (i.e., any institutional lender) might well have been willing to commit for a loan "of not less than $201,375.00.” Thus, the construction adopted is contrary both to the plain language of the mortgage contingency clause and to its commonly accepted meaning.
The practical result of this construction is to convert the standard mortgage contingency clause into a clause which gives the purchasers a unilateral option to cancel — to be effected by the simple expedient of applying unsuccessfully for a loan in an amount higher than the stipulated sum. It can hardly be thought that the parties could have believed that this was the way the clause was intended to operate. No one suggests that the Committee of the Association of the Bar intended to draft a standard contract containing a clause which could be so easily employed to defeat the purchasers’ obligation.
Nevertheless — although contrary to the ordinarily accepted meaning of a mortgage contingency clause and to the effect of this clause that the parties and the drafters of the clause must have intended — the majority holds that the construction advanced by the purchasers is correct. The argument is that the plain meaning of the contract compels this construction. But the plain meaning, I submit, does just the opposite. The obligation of the purchasers is clearly conditioned on the actions and agreement of a third party, i.e., the "issuance on or before September 1, 1988 of a written commitment from any Institutional Lender pursuant to which such Institutional Lender agrees to make a loan” (emphasis addéd). The contingency does not depend on actions or events within the control of the purchasers. The only reference in clause 23 to an application being made by the purchasers is in the second sentence of the clause, i.e., "[p]urchaser[s] shall (a) make prompt application to one or more Institutional Lenders for such first mortgage loan.” The reference to "such first mortgage loan”, of course, is to the loan "of not less than $201,375.00” referred to in the first sentence in clause 23 for which the lender has issued its commitment.
No case has been cited where the standard mortgage contin *1021 gency clause has been given the effect which the purchasers advocate here. This construction is contrary to the commonly understood purpose of a mortgage contingency clause, to what appears to be the commonsense meaning of the clause intended by the drafters, and to what, I believe, the parties to this must reasonably have intended. To be sure, clause 23 can easily be redrafted to avoid the purchasers’ construction and to close what Supreme Court aptly describes as "an unfettered escape hatch for a purchaser who would use it to his advantage.” Rejecting the purchasers’ meaning and staying with the commonly understood meaning of the standard clause would obviate the need for any such amendment; and it would avoid what may be the resulting confusion and controversy over the rights of parties under existing form M 146 contracts containing clause 23, as it now reads.
Chief Judge Wachtler and Judges Kaye, Titone, Bellacosa and Yesawich, Jr.,* concur; Judge Hancock, Jr., dissents and votes to reverse in an opinion; Judge Simons taking no part.
Order affirmed, with costs, in a memorandum.

 Designated pursuant to NY Constitution, article VI, § 2.